UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENE WHITAKER,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>GARY SWARTHOUT,<br><br>　　　　　　Respondent. | No. 2:14-cv-0947 MCE KJN P<br><br>FINDINGS & RECOMMENDATIONS |

Introduction

　　　　Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2010 convictions for premeditated attempted murder (Cal. Penal Code §§ 664/187(a)), assault with a firearm (Cal. Penal Code § 245(a)(2)), and battery with serious bodily injury (Cal. Penal Code § 243(d)), with enhancements for a prior robbery conviction and for committing a crime that was gang related (Cal. Penal Code §§ 186.22(b)(1), 211, 667(b)-(i), 1170.12). Petitioner is serving a sentence of 19 years to life.

　　　　This action is proceeding on the original petition. (ECF No. 1.) This petition is difficult to understand. In the answer, filed November 6, 2014, respondent reasonably construed the petition to raise two claims: 1) petitioner's conviction was based on evidence that was manufactured or withheld; and 2) jury instruction error. (ECF No. 20.) On November 20, 2014, respondent filed a short reply to the answer. (ECF No. 21.) Petitioner does not dispute

respondent's interpretation of his claims. Accordingly, the undersigned herein addresses the claims addressed by respondent in the answer.

For the reasons stated herein, the undersigned recommends that the petition be denied.

Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough

2

that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). If there is no reasoned decision, "and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. That presumption may be overcome by a showing that "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

"When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013). "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de novo review of the claim. Id., at 1097.

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal court conducts an independent review of the record. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784. "[A] habeas court must determine what arguments or theories supported or, . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at

786.

Factual Background

The opinion of the California Court of Appeal contains a factual summary. As noted by the state appellate court, the appeal arose after a jury trial of petitioner, petitioner's son (Gene Whitaker III), and Dewayne Presley. The state court opinion refers to petitioner as Whitaker and to petitioner's son as Whitaker III.

After independently reviewing the record, the undersigned finds the California Court of Appeal's factual summary to be accurate and adopts it herein.

> Weathers, age 38 at trial, testified he had known Whitaker since they were 16. In December 2007, Weathers "sucker punched" Whitaker in the jaw. About two weeks later on December 27, 2007, Weathers was attacked by "Wheezy" (Presley), who split Weather's head. As Weathers struggled with Presley, Whitaker III approached with a long gun. Weathers pushed the gun barrel away, and "that's when he fired on me." Weathers woke up in the hospital. Whitaker's sister, Gwendolyn Davis, had Weathers sign a letter seeking to retract the charges. [Footnote 11.] Weathers thought the attack was in retaliation for his earlier fight with Whitaker. Weathers had identified photographs of Whitaker III as the person with the gun, Presley as the person hitting him, and Whitaker as the person he had recently punched.
>
> > [Footnote 11: Davis testified Weathers had asked her to write that letter because he was illiterate.]
>
> At the hospital, Weathers told a deputy three men attacked him, including "James Whitaker" (as the deputy had recorded the name) and "Wheezy," who Weathers thought was "James Whitaker's" son, Weathers thought both of these men were "East Side Piru," and "James Whitaker" had told Weathers he had "disrespected him in front of some people," and told him, "I'm going to do something to you[.]"
>
> A neighbor, David Penn, testified he saw two people fighting with Weathers. The taller attacker had a long rifle pointed to Weathers's head, and Weathers was holding the rifle barrel. The taller man tried to chamber a round, then turned the rifle around and clubbed Weathers with the butt several times "Like a golf club[,]" then the two men fled. Penn testified exhibit 51 (in two parts, marked 51-A and 51-B) looked like the rifle he saw the men use, and which broke "after the last hit[.]" Penn had identified the shorter of the two men at a field showup shortly after the incident, but he could not identify the man in court. Deputy Kristin Cook testified Penn had identified Presley.
>
> Constance Goins, Whitaker's sister, denied knowing or having said anything about what happened, but admitted Whitaker was upset at

4

Weathers for breaking his jaw.

Beverly Robinson, also Whitaker's sister, testified she told a deputy what she had heard from others, and denied making specific statements to a detective.

However, Detective Nathan Wise testified he spoke with Robinson on May 22, 2008, and she said people (including her sister, Goins) were mad at her for speaking to the police and wanted her to change her story. Robinson told him she was angry at Whitaker for making her nephew Whitaker III "do his dirty work" for him. Robinson said Whitaker told her son (Kevin Davis) that he had a gun and needed help "handling" Weathers, and Whitaker "might not make it back[.]" Robinson said Whitaker told Whitaker III and Presley "they had to do this for East Side Piru" and the men left after Whitaker "was giving them liquor and pumping them up" shortly before the shooting. Robinson said that Whitaker had told people Robinson was "snitching," and when Robinson left the courtroom earlier, Detective Wise overheard her say she could not live in Rancho Cordova anymore.

Deputy Charles Gailey testified he spoke to Robinson the day after the incident. Robinson said the police caught two people, but Whitaker got away, and she was mad that he had involved her nephew in the incident. She had been with all three defendants the night before, and Whitaker "hyped them up and talked them into doing his dirty work" for them. Deputy Gailey also spoke with Kevin Davis, who told him the defendants had been drinking together, Whitaker "is a coward and he hyped the other two up and got them to fight his battle" and Whitaker said he had a "chopper" (a gun), and might not make it back. [Footnote 12.]

> [Footnote 12: Davis testified he was not with any of the defendants the day before he spoke to a deputy, and he denied making the various statements to the deputy.]

Deputy Ian Carver found unfired rifle cartridges and one fired casing near where Weathers was found unconscious. Carver's canine partner "Ike" found Whitaker III and Presley nearby. Another officer testified Whitaker III wore red and black clothing with a "P" on the belt, as typically worn by East Side Piru gang members. Another officer found the rifle about a quarter of a mile away in some bushes, near where the two later-detained men had jumped a fence.

A criminalist testified the rifle found nearby could have been used to "cycle" the cartridges found at the scene, but because of the rifle's poor condition, he was not able to fire it and determine for sure. The barrel was bent and the stock had blood spatters on it, consistent with the rifle having been used as a bludgeon. [Footnote 13.]

> [Footnote 13: Presley's jury heard testimony that Presley's DNA was not found on the rifle.]

5

Detective Burk Stearns testified about his gang expertise. He had particular experience with the East Side Piru, one of the Blood subsets in Rancho Cordova. It was common for East Side Piru members to wear red clothing, and have a "P" on their belts. They strived for respect and reputation, and retaliated against those that impaired their goals. It was important for a member to "[put] in work" for the gang, such as by committing an assault for another gang member. Gang activities included drug sales, homicides, vehicle thefts, assaults, and robberies. Gang violence discouraged victims or witnesses from reporting gang activities or testifying about them.

Stearns "validated" Presley ("Wheezy") as an East Side Piru member based on his arrest while in possession of narcotics and a loaded gun, a "'Chedda Boys'" tattoo (which referred to a subset of the East Side Piru gang), his association with the Whitakers, and his fight with a rival Crip member while in jail. [Footnote 14.]

> [Footnote 14: In testimony before the Presley jury, Stearns also referred to documents from Presley's jail cell referring to "Chedda Boys" and other gang subjects.]

Stearns validated Whitaker III ("Little G") as an East Side Piru member, based on gang tattoos, clothing, the "P" belt buckle, associating with other defendants, and information from other law enforcement sources. [Footnote 15.] Stearns validated Whitaker ("G") as an East Side Piru member based on the instant crimes, a prior incident involving drug sales while wearing gang clothing in a gang area, and other times Whitaker had worn gang clothing. In response to a hypothetical based closely on the facts of this case, Detective Stearns opined the incident would be gang-related. The younger assailants would be putting in work toward enhancing their gang status, and the gang would benefit by signaling that its members cannot be attacked. In response to a further question, based on an older gang victim's instructions to younger gang members to retaliate, Stearns testified this would bolster his opinion that the later attack was gang related.

> [Footnote 15: The trial court excluded on Miranda grounds (Miranda v. Arizona (1966) 384 U.S. 436), a statement by Whitaker III admitting he was a gang member, and also refused to allow the gang expert to rely on that statement. We express no view on the propriety of the latter ruling.]

Detective Stearns was present when Robinson told Detective Wise that she heard Whitaker tell her son (Davis) that Whitaker had a gun and needed help "handling" Weathers. She also said people were "getting on" her for talking to the police, but it was not right for Whitaker to make his son do his dirty work. Robinson's sister (Goins) had told Robinson to change her story. Robinson said Whitaker said he might not make it back, he gave the other defendants liquor, and told them they had to do it for East Side Piru.

*2. Arguments, Verdicts and Sentences*

6

>  \*\*\*\*
>
>  The "Whitaker" jury found Whitaker guilty of attempted premeditated murder, found he committed the crime to benefit a criminal street gang (§§ 664/187, subd. (a), 186.22, subd. (b)(1)), but failed to reach verdicts on pendant firearm allegations, later impliedly dismissed. The jury also found him guilty of assault with a firearm and battery causing serious bodily injury (§§ 243, subd. (d)), but failed to reach verdicts on pendant gang allegations, later impliedly dismissed. The trial court found he had a 1992 second degree robbery conviction − a serious felony and strike (§§ 221, 667, subd. (a), (b)-(i), 1170.12)—and sentenced him to prison for an unstayed term of life (with a parole eligibility period of 14 years) plus five years. Whitaker timely filed his appeal.
>
>  The "Whitaker" jury also found Whitaker III guilty of attempted premeditated murder, found he personally used a firearm and inflicted great bodily injury (§§ 664/187, subd. (a), 12022.53, subd. (b), 12022.7), but failed to reach verdicts on pendant gang allegations, later impliedly dismissed. The jury also found him guilty of assault with a firearm and battery causing serious bodily injury (§§ 245, subd. (a)(2), 243, subd. (d)) with various findings, but sentences imposed on those counts were stayed. The trial court sentenced Whitaker III to an unstayed prison term of life (with a parole eligibility period of seven years) plus 13 years. Whitaker timely appealed.
>
>  Presley's jury found him guilty of attempted premeditated murder, found he personally inflicted great bodily injury, committed the crime to benefit a gang, and that a principal personally used a firearm. (§§ 664/187, subd. (a), 12022.7, subd. (a), 186.22, subd. (b)(1); see 12022.53, subd. (e).) The jury also found him guilty of assault with a firearm and battery causing serious bodily injury (§§ 245, subd. (a)(2), 243, subd. (d)), with various findings, sentences on which were stayed. The court sentenced him to an unstayed prison term of life (with a parole eligibility period of seven years) plus 13 years. Presley timely appealed.

(Respondent's Lodged Document 1, at 17-22.)

Claim 1: False or Withheld Evidence

Petitioner alleges that the prosecutor "manufacture[d] false evidence." (ECF No. 1 at 13, 20.) Petitioner also alleges that the prosecutor "intentionally withheld crucial evidence." (Id. at 15.) Petitioner also alleges that newly discovered evidence submitted before sentencing was ignored. (Id. at 19.)

Citing Napue v. Illinois, 360 U.S. 264 (1959), petitioner argues that he can show that "1) the testimony an[d] evidence was actually false, 2) the prosecutor knew or should have known that the testimony an[d] evidence was actually false; 3) the false testimony an[d] evidence was

material." (Id. at 20.) Petitioner also alleges that his counsel failed to call exculpatory witnesses and present evidence of third party culpability, after petitioner begged him to do so. (Id. at 26-27.)

*State Court Opinions*

Petitioner raised the instant claims in a habeas petition filed in the Sacramento County Superior Court. The Superior Court denied these claims for the reasons stated herein:

> Petitioner's 2009 conviction of premeditated attempted murder, assault with a firearm, and battery with serious bodily injury was affirmed on appeal with corrections in February 2013 and became final in May 2013. He now claims: (1) he was factually innocent because cell phone records would have provided an alibi; (2) the prosecutor engaged in misconduct to which trial counsel did not object; (3) hearsay evidence was wrongfully admitted; (4) trial counsel was ineffective for failing to present defense evidence; (5) trial counsel was ineffective for failing to object to jury instructions; (6) trial counsel was ineffective for failing to sever petitioner's case from his co-defendant's; and (7) he is entitled to discovery under Penal Code § 1054.9.
>
> I. CLAIMS THAT SHOULD HAVE BEEN RAISED ON APPEAL
>
> Claims that should have been raised on appeal are not cognizable on habeas corpus unless the petitioner can show that (1) clear and fundamental constitutional error strikes at the heart of the trial process; (2) the court lacked fundamental jurisdiction; (3) the court acted in excess of jurisdiction not requiring a redetermination of facts; or (4) a change in law after the appeal affected the petitioner. (In re Dixon (1953) 41 Cal.2d 756, 759; In re Harris (1993) 5 Cal.4th 813, 828.)
>
> Petitioner claims that the prosecutor engaged in misconduct by introducing false evidence/testimony. Prosecutorial misconduct that occurs on the record must be raised on appeal. Even if the misconduct related to information outside the record, petitioner has failed to specify what testimony or evidence was false or to show that the testimony was, in fact, false. Therefore, the claim is without merit, as is the related claim that trial counsel was ineffective for failing to object to the prosecutor's misconduct. Similarly, petitioner claims that hearsay evidence was admitted in the form of statements by Constance Goins and Beverly Robinson. The wrongful admission of evidence is a claim that can and must be raised on direct appeal. Petitioner may not use this petition as a substitute for raising the claim on appeal.
>
> II. PENAL CODE SECTION 1054.9
>
> Penal Code section 1054.9 permits a defendant who has been sentenced to death or life imprisonment *without* the possibility of

> parole to obtain post-conviction discovery. As petitioner was sentenced to life imprisonment *with* the possibility of parole, he is statutorily ineligible for relief under that section.
>
> III.  INEFFECTIVE ASSISTANCE OF COUNSEL
>
> A petitioner seeking relief by way of habeas corpus has the burden of stating a prima facie case. (In re Bower (1985) 38 Cal.3d 865, 872.) A petition should attach as exhibits all reasonably available documentary evidence or affidavits supporting the claim. (People v. Duvall (1995) 9 Cal.4th 464, 474.) To show constitutionally inadequate assistance of counsel, a defendant must show that counsel's representation fell below an objective standard and that counsel's failure was prejudicial to the defendant. (In re Alvernaz (1992) 2 Cal.4th 924, 037.) It is not a court's duty to second guess trial counsel and great deference is given to trial counsel's tactical decisions. (In re Avena (1996) 12 Cal.4th 694, 722.) Actual prejudice must be shown, meaning that there is a reasonable probability that, but for the attorney's error(s), the result would have been different. (Strickland v. Washington (1984) 466 U.S. 668, 694.) A petition alleging ineffective assistance of counsel based on the failure to obtain favorable evidence must show what evidence should or could have been obtained and what effect it would have had. (People . Geddes (1991) 1 Cal.App.4th 448, 454.)
>
> ****
>
> A.  Phone Records
>
> Petitioner claims that he is innocent of the offense for which he was convicted and that cell phone records would show where he was at the time the offenses were committed. First, he has not attached the cell phone records in question. More importantly, cell phone records would not necessarily establish his innocence since it appears that petitioner was convicted on a theory of aiding and abetting, namely that on the night before the crimes, petitioner incited his co-defendants to commit the crimes by "hyping" them up and talking them into assaulting the victim in retaliation for the victim's prior assault on petitioner. Therefore, petitioner has not shown that counsel's failure to present the cell phone records was unreasonable or prejudicial.
>
> B.  Defense Witnesses
>
> Petitioner also contends that counsel failed to locate any exculpatory witnesses or present a third party culpability defense, but again fails to identify the witnesses or third party culpability evidence that defense counsel should have investigated and/or presented at trial.

(Respondent's Lodged Document 8 at 1-3.)

Petitioner appealed the Superior Court's order to the California Court of Appeal.

(Respondent's Lodged Document 9.) Citing In re Clark, 5 Cal.4th 750, 767 n.7 (1993), the

1    California Court of Appeal dismissed petitioner's appeal on grounds that the order appealed from
2    was "nonappealable."¹  (Respondent's Lodged Document 10.)
3         Petitioner then filed a pleading titled "Objection to the Improper Habeas Corpus Appeal
4    Dismissal" in the California Court of Appeal, challenging the dismissal of his appeal.
5    (Respondent's Lodged Document 11.)  The California Court of Appeal construed this pleading as
6    a petition for rehearing, which it denied.  (Respondent's Lodged Document 12.)
7         Petitioner then filed a pleading titled "Petition for Writ of Mandate" in the California
8    Supreme Court.  (Respondent's Lodged Document 13.)  The California Supreme Court denied
9    this petition, apparently without comment or citation.  (Respondent's Lodged Document 14.)

*Exhaustion*

Respondent argues that the claims raised by petitioner in claim one are not exhausted.

Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a claim before presenting that claim to the federal courts.  To satisfy the exhaustion requirement, the claim must have been fairly presented to the state courts completely through to the highest court available.  See, e.g., Peterson v. Lampert, 319 F.3d 1153, 1156 (9th Cir. 2003) (en banc).  In the state courts, the petitioner must refer to the specific federal constitutional guarantee and must also state the facts that entitle the petitioner to relief on the federal constitutional claim.  Shumway v. Payne, 223 F.3d 983, 987 (9th Cir. 2000).  Fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which the claim is based.  See, e.g., Castillo v. McFadden, 399 F.3d 993, 999 (9th Cir. 2005).  The exhaustion requirement ensures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees.  See Coleman v. Thompson, 501 U.S. 722, 731 (1991).

"As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts ... in the manner required by the state courts,

---

¹ "Because no appeal lies from the denial of a petition for writ of habeas corpus, a prisoner whose petition has been denied by the superior court can obtain review of his claims only by filing a new petition in the Court of Appeal."  In re Clark, 5 Cal.4th at 767 n.7.

thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" Casey v. Moore, 386 F.3d 896, 915–916 (9th Cir. 2004) (quoting Vasquez v. Hillery, 474 U.S. 254, 257, (1986)).  If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, then the claims have not been fairly presented to the state courts and are not eligible for federal habeas corpus review.  Edwards v. Carpenter, 529 U.S. 446, 453 (2000); Castille v. Peoples, 489 U.S. 346, 351 (1989).

Respondent argues that petitioner did not exhaust the claims raised in claim one because he presented them to the California Supreme Court in a petition for writ of mandate that failed to include any factual support.  Respondent also argues that a petition for writ of mandate is not the proper procedural context in which to raise these claims.

"[T]he sole and proper remedy after denial of a petition for writ of habeas corpus by a superior court is to file a new petition with the Court of Appeal, which has original jurisdiction in habeas corpus matters." In re Reed, 33 Cal.3d 914, 918 n. 2 (1983) (citing Cal. Const., art. VI, § 10.); reversed on other grounds by In re Alva, 33 Cal.4th 254 (2004).  "Further review may be sought in [the California Supreme Court] either by a new petition for habeas corpus or, preferably, by a petition for hearing." Id.

A petition for writ of mandate filed in the California Supreme Court does not exhaust state court remedies because it is not the proper procedural context in which to request that claims be reviewed on their merits.  See Saldana v. Spearman, 2014 WL 4761596 at *4 (N.D. Cal. 2014) (a petition for writ of mandate filed in the California Supreme Court does not exhaust state court remedies); Goff v. Salinas, 2013 WL 425330 at *2 n. 2 (E.D. Cal. 2013) (a petition for writ of mandate "is not a procedure likely to be utilized to review the merit of an action in habeas.  Thus, this filing for a writ of mandate does not exhaust his claims.").  Accordingly, the claims raised in claim one are not exhausted because they were improperly raised in a petition for writ of mandate.

Respondent also argues that the petition for writ of mandate failed to exhaust petitioner's claims because it failed to include any factual support.  A claim has not been fairly presented to a

11

1  state court unless the prisoner describes in the state court proceedings both the operative facts and
2  federal legal theory on which his claim is based.  Duncan v. Henry, 513 U.S. 364, 370 (1995).
3  After reviewing the petition for writ of mandate, the undersigned agrees with respondent that
4  petitioner did not describe the operative facts on which his claims were based.  For this reason,
5  the claims raised in claim one are also not exhausted.

6       *Merits*

7       Respondent goes on to argue that even if the claims raised in claim one are not exhausted,
8  they should be denied on the merits.  After reviewing the record, the undersigned agrees with
9  respondent that the claims raised in claim one are without merit and should be denied.  28 U.S.C.
10  § 2254(a)(2) (a habeas petition may be denied on the merits notwithstanding the petitioner's
11  failure to exhaust state court remedies.)  In this circumstance, the undersigned  reviews the
12  unexhausted claims de novo, rather than under AEDPA's deferential standard of review.  See,e.g.,
13  Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004).

14       Petitioner alleges that the prosecutor both withheld evidence and presented false evidence.
15  The legal standards for these claims are set forth herein.

16       In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that "the suppression
17  by the prosecution of evidence favorable to an accused upon request violates due process where
18  the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith
19  of the prosecution."  Id. at 87.  In order to succeed on a Brady claim, a petitioner must show:  (1)
20  that the evidence at issue is favorable to the accused, either because it is exculpatory or
21  impeaching; (2) that it was suppressed by the prosecution, either willfully or inadvertently; and
22  (3) that it was material (or, put differently, that prejudice ensued).  Banks v. Dretke, 540 U.S. 668,
23  691 (2004).  Evidence is material if "there is a reasonable probability that, had the evidence been
24  disclosed, the result of the proceeding would have been different."  Cone v. Bell, 556 U.S. 449,
25  469–70 (2009).

26       The government's knowing use of false or perjured testimony against a defendant to
27  obtain a conviction violates due process.  Napue v. Illinois, 360 U.S. 264, 269 (1959).  To prevail
28  on a claim based on Napue, the petitioner must show that (1) the testimony (or evidence) was

actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material. See United States v. Zuno–Arce, 339 F.3d 886, 889 (9th Cir. 2003).

In the petition, petitioner does not identify any of the evidence that was allegedly suppressed or false. Thus, petitioner's claims alleging violations of Brady and Napue are conclusory, vague, and unsupported by any factual assertions. On this basis, these claims should be denied. See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).

As discussed above, petitioner also alleges that newly discovered evidence that was submitted before sentencing was ignored. (ECF No. 1 at 19.) Petitioner does not identify the newly discovered evidence. Accordingly, this claim should also be denied on grounds it is vague and conclusory. See Jones v. Gomez, supra.

In claim one, petitioner also raises an ineffective assistance of counsel claim. Ineffective assistance of counsel claims are governed by the two-part test announced in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. Williams v. Taylor, 529 U.S. 362, 390–91 (2000) (citing Strickland, 466 U.S. at 687).

To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. A reasonable probability is "probability sufficient to undermine confidence in the outcome." Id. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. Strickland, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions

might be considered sound trial strategy.  Id.

Petitioner alleges that his counsel failed to call exculpatory witnesses and present evidence of third party culpability, after petitioner begged him to do so. (ECF No. 1 at 26-27.) However, petitioner does not identify any of the witnesses or evidence of third party culpability that he allegedly begged counsel to present.  Accordingly, this claim of ineffective assistance of counsel should be denied on grounds that it is vague, conclusory and unsupported by any factual assertions.  See Jones v. Gomez, supra.

As discussed above, in his state habeas petition, petitioner argued that his trial counsel was ineffective for failing to present cell phone records which would have established an alibi. To the extent petitioner raises this claim in the instant petition, the undersigned finds that this claim is without merit for the reasons stated by the Superior Court.  As noted by the Superior Court, cell phone records would not necessarily have established his innocence because petitioner was convicted on an aiding and abetting theory that did not require his presence at the time of the attack.  The prosecution presented evidence demonstrating that the night before the attack, he incited his co-defendants to commit the attack by "hyping" them up and talking them into assaulting the victim.  Petitioner has not demonstrated how the outcome of the trial would have been different had trial counsel presented cell phone records.  Accordingly, this claim of ineffective assistance of counsel is without merit.

Claim 2:  Jury Instruction Error

Petitioner alleges that the trial court erred in refusing to give the correct version of CALCRIM No. 400 and by failing to advise the jury in accordance with People v. Nero, 181 Cal.App.4th 504 (2010), and People v. Samaniego, 172 Cal.App.4th 1148 (2009). (ECF No. 1 at 19.)

*State Court Opinion*

The California Court of Appeal denied this claim for the reasons stated herein:

> Defendants contend CALCRIM No. 400, as given to each jury in this case, is defective because it refers to an aider and abettor being "equally guilty" with the principal. We deem this contention to be forfeited, and further conclude that any error was harmless.

14

CALCRIM No. 400, as given in this case, provided: "A person may be guilty of a crime in two ways. One, he may have directly committed the crime. I will call that person the perpetrator. Two, he may have aided and abetted a perpetrator, who directly committed the crime. A person is equally guilty of the crime whether he committed it personally or aided and abetted the perpetrator who committed it."

We previously have held that the failure to request a modification to this instruction in the trial court forfeits the precise contention raised in this appeal:

> Generally, a person who is found to have aided another person to commit a crime is 'equally guilty' of that crime. [Citation.]
>
> However, in certain cases, an aider may be found guilty of a greater or lesser crime than the perpetrator. [Citations.]
>
> Because the instruction as given was generally accurate, but potentially incomplete in certain cases, it was incumbent on [defendants] to request a modification if [they] thought it was misleading on the facts of this case. [Their] failure to do forfeits the claim of error. (People v. Lopez (2011) 198 Cal.App.4th 1106, 1118-1119 ) (Lopez); see also People v. Samaniego (2009) 172 Cal.App.4th 1148, 1163-1165.)

We adhere to the views expressed in Lopez (which rejected contrary views expressed in People v. Nero (2010) 181 Cal.App.4th 504, relied on by defendants herein) and conclude the claim has been forfeited. [Footnote 16.]

> [Footnote 16: During deliberations, the Whitaker jury asked if it was possible "to convict the [perpetrator] of the main crime and to convict the other defendant of aiding and [abetting] the lesser included offense?" The trial court replied: "In this case you are charged to determine the guilt or innocence of two separate defendants. You have been given separate verdict forms relating to each defendant, setting forth the questions you must answer as they relate to each defendant. [¶] You must separately consider the evidence as it applies to each defendant, and decide each charge for each defendant separately." Contrary to Whitaker's claim, this does not avoid forfeiture because no modification to CALCRIM No. 400 was sought. Moreover, the reply accurately emphasized that the jury had to determine each defendant's liability separately, further undermining the claim that CALCRIM No. 400 would have been misinterpreted, at least as to the Whitaker jury.]

Moreover, the trial court instructed each jury with CALCRIM No. 401, which told each jury that aider liability required the People to prove a defendant knew of the perpetrator's purpose and shared the perpetrator's intent. And defendants do not claim any error in the instructions defining the intent required for the substantive charges.

15

> Because we presume the juries would correlate the various instructions (see People v. Sanchez (2001) 26 Cal.4th 834, 952), they would not have used the "equally guilty" language to truncate their duty to determine each defendant's intent. Thus, any error in the "equally guilty" language was harmless. (See Lopez, supra, 198 Cal.App.4th at pp. 1119-1120.)

(Respondent's Lodged Document 1 at 22-23.)

*Procedural Default*

Respondent argues that petitioner procedurally defaulted his claim challenging the version of CALCRIM 400 read to the jury and the trial court's failure to advise the jury in accordance with Nero and Samaniego. Respondent's argument is based on the finding by the California Court of Appeal that petitioner waived this claim by failing to request a modification of CALCRIM 400.

As a general rule, a federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729 (1991). In order to be "independent," "the state law basis for the decision must not be interwoven with federal law." La Crosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001). "To be 'adequate,' the state procedural rule must be 'strictly or regularly followed' and 'consistently applied.'" Id. However, a procedural default does not bar a federal court from considering a federal claim on habeas review "unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). Accordingly, a claim is defaulted absent a showing of cause for the default and actual prejudice as a result of the alleged violation of federal law. Coleman, 501 U.S. at 753.

Here, while the state appellate court indicated that petitioner forfeited his claim due to trial counsel's failure to object to the jury instructions as given, the state court also adjudicated the claim on the merits. Moreover, given the often lengthy and complicated matter of procedural default, particularly an analysis of cause and prejudice, it appears that the interests of judicial economy weigh in favor of reaching the merits of this claim. See Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the

16

merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same."), citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be."). In this case, as discussed below, petitioner's jury instruction claim is without merit. Therefore, an analysis of the merits of this claim appears less complicated and time-consuming than a lengthy discussion of cause and prejudice.

*Analysis-Merits*

Jury instruction issues are generally matters of state law for which federal habeas relief is not available. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). A federal habeas court does not review jury instructions to determine whether they violate state law, as federal habeas relief "does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle, 502 U.S. at 72. Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. See id. The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982). Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), which is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. See, e.g., Hedgpeth v. Pulido, 555 U.S. 57, 61–62 (2008) (per curiam).

Petitioner argues that the words "equally guilty" in the aider and abettor instruction were erroneous and relieved the prosecution's burden of proof. Petitioner is not entitled to federal habeas relief for the following reasons. The jury was instructed that they could not convict petitioner unless his guilt was proven beyond a reasonable doubt. (RT at 1916.) The jury was also instructed that a person is equally guilty of a crime whether he committed it personally or

17

aided and abetted it. (Id. at 1931.) The jury was then immediately instructed that to prove that a defendant was guilty of a crime based on aiding and abetting that crime, the prosecutor had to prove that, "The perpetrator committed the crime; the defendant knew that the perpetrator intended to commit the crime; before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; and the defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime." (Id. at 1931-32) The trial court then instructed the jury,

> Someone aids and abets a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.
>
> If all of these requirements are proved, a defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor.
>
> If you conclude that a defendant was personally present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether that defendant was an aider and abettor. However, the fact that a person is present at the scene or a crime or fails to prevent the crime does not, by itself, make him an aider and abettor.

(Id. at 1932.)

The jury was also instructed that it must consider the evidence as it applies to each defendant. (Id. at 1915.) "You must decide each charge for each defendant separately." (Id.)

Petitioner fails to show any ambiguity or inconsistency in the jury instructions on aiding and abetting. See Waddington v. Sarausad, 555 U.S. 179, 190–91 (2009) ("the defendant must show both that the instruction was ambiguous and that there was a 'reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt") (citations omitted). As described above, the jury was specifically instructed that the prosecution had to prove beyond a reasonable doubt the requisite elements of aiding and abetting. The trial court's additional instruction, CALCRIM 401, served to correct any potential error of eliminating the burden to prove petitioner had the same intent as the perpetrator.

////

The jury asked the trial court if it could convict the perpetrator of the main crime and convict the "other defendant," i.e., petitioner, of aiding and abetting the lesser included offense. (CT at 1137.) In response, the trial court instructed the jury,

> In this case you are charged to determine the guilt or innocence of two separate defendants. You have been given separate verdict forms relating to each defendant, setting forth the questions you must answer as they relate to each defendant. You must separately consider the evidence as it applies to each defendant, and decide each charge for each defendant separately.

(Id. at 1138.)

As noted by the California Court of Appeal, the trial court's response accurately emphasized that the jury had to determine each defendant's liability separately, further undermining the claim that CALCRIM No. 400 would have been misinterpreted.

A jury is presumed to follow the instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000). The California Court of Appeal reasonably found that, considering all of the instructions given, the jury would not have used the "equally guilty" language to truncate their duty to determine petitioner's guilt.

Thus, petitioner fails to show that the state appellate court's decision constituted an unreasonable application of clearly established federal law and/or that it resulted in a decision based on an unreasonable determination of the facts. The California Court of Appeal reviewed the instructions as a whole rather than in artificial isolation. See Estelle, 502 U.S. at 72. For these reasons, the undersigned recommends that petitioner's second claim be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to

which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 20, 2015

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Whit947.157